UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SHAWANO SCHOOL DISTRICT,

        Plaintiff,

        v.                                      Case No. 24-C-770

D.W., by and through his parents, Mike W. and Jody J.,

        Defendant.

---

## DECISION AND ORDER GRANTING MOTION TO SUPPLEMENT

---

        This action is an appeal from an administrative ruling rendered by an Administrative Law Judge on May 10, 2024, following a special education due process hearing pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq*. The ALJ concluded that the Shawano School District incorrectly determined that the Student's misconduct was not a manifestation of his disability and, as a result, improperly expelled the Student from the District. She also found that the District had not met its burden to establish that the Student should be placed in an Interim Alternative Education Setting under 34 C.F.R. § 300.532(b). Presently before the court is the District's motion for leave to supplement the administrative record. For the following reasons, the motion will be granted.

        The Student has been diagnosed with a traumatic brain injury, Attention Deficit Hyperactivity Disorder (ADHD), anxiety disorder, oppositional defiance disorder, and episodic mood disorder. He has received special education and related services through an Individualized Education Plan (IEP) while attending school in the District. The Student attended the eighth grade during in the 2023–24 school year. Pertinent to the matter before the court, on September 27, 2023, the Student struck a teacher in the forehead with his iPad. The teacher was diagnosed with

suffering a mild concussion as a result. On September 29, 2023, the District conducted a manifestation determination review (MDR) following the incident and concluded that the Student's conduct was neither caused by nor had a direct and substantial relationship to his disability of traumatic brain injury and thus was not a manifestation of his disability. As a result of the MDR determination, the Student was expelled from the District. The District's determination was upheld by the Wisconsin Department of Public Instruction.

On March 21, 2024, the Student's parents filed a request for an expedited due process hearing with the Wisconsin Department of Public Instruction under Wis. Stat. ch. 115 and IDEA against the District. The court held a two-day hearing on April 25 and 26, 2024. Prior to the hearing, the ALJ advised the parties that the Student's case-in-chief was to be completed by 8:00 p.m. on the first day and that the District's case was to be completed by 5:00 p.m. on the second day. She informed the parties that the hearing would conclude no later than 5:00 p.m. on April 26, 2024, so that she could attend her child's lacrosse game. Dkt. No. 15-3 at 1; Hr'g Tr. 358:19–22, Dkt. No. 12-10 ("We are going to be done by 5, yes. I've got another lacrosse game to get to. I'm not missing any because I only have three more weeks of being a sports mom."). The first day of the hearing commenced at 10:00 a.m. and was adjourned at 6:55 p.m. The hearing resumed at 8:02 a.m. the following day, and the District began its case-in-chief. The first witness's testimony lasted over three hours and over an hour-and-a-half of that time consisted of cross-examination. *See* O'Brien-Heizen Aff. ¶ 7, Dkt. No. 15; Hr'g Tr. 466:25–67:14 ("Your Honor, we've been going through, you know, cross-examination for an hour and a half now . . . ."). Concerned with the time restraints, the District's attorney suggested working through lunch, but the ALJ and the Student's counsel objected:

> MR. WADE: And whether we are going to get a chance to - - we may need to push through or take a shorter lunch break. That's the part I want to chat about.

2

>
> THE EXAMINER: Wait. Not having a lunch, is that what you're suggesting? I don't think that's okay.
>
> MR. SPITZER-RESNICK: I object to that.
>
> MR. WADE: I'm concerned about our 5:00 deadline. I want to be mindful of your lacrosse schedule.

Hr'g Tr. 543:16–44:02. The lunch recess ultimately lasted from 12:18 to 1:02 p.m. *Id.* at 544:15. Closing arguments began at 3:59 p.m. and, after the ALJ advised that she was not looking for rebuttal, the hearing concluded at 4:44 p.m. on April 26, 2024. *Id.* at 689:18–90:02 ("MR. SPITZER-RESNICK: I'm assuming you're not looking for rebuttal? THE ALJ: I'm really not. MR. SPITZER-RESNICK: That's fine. I was just asking. THE ALJ: I'm looking at the clock, and I'm like am I going to offer it? I'm not, okay, so we're done. MS. O'BRIEN-HEINZEN: I will note that we're done before 5.").

The District asserts that it was unable to call three witnesses on its list during the hearing: Jodi Guenther, Julie Wynveen, and Mindy Bougie. It maintains that these witnesses would have offered the following testimony:

1. <u>Jodi Guenther</u>. Ms. Guenther prepared the materials for the MDR. She would have testified that the team discussed the Student's behavioral history in determining that the behavior was not a manifestation of the Student's disability, that the members of the MDR were knowledgeable about the Student and his past behavior and disability, and that the team discussed and determined that the District appropriately implemented the Student's IEP and behavior plan.

2. <u>Julie Wynveen</u>. Ms. Wynveen was the teacher whose classroom shared a moveable wall (often open) with the teacher injured by the Student. Ms. Wynveen would have testified about what she observed of the Student's emotional state and the teacher's demeanor and implementation of the Student's behavior plan. Ms. Wynveen also would have testified that the MDR team discussed the Student's behavior history before determining his conduct was not a manifestation of his disability and discussed how the teacher had implemented his behavior plan during the incident in question.

3. <u>Mindy Bougie</u>. Ms. Bougie was in the classroom where the incident happened right before it occurred. She would have testified to her observations of the Student's outward emotional state. She was also part of the MDR and would

3

> have testified that the MDR team discussed the Student's behavioral history before determining his conduct was not a manifestation of his disability.

Pl.'s Br. at 4, Dkt. No. 14. The District also seeks to add testimony about six additional incidents involving the Student that occurred after the hearing. It asserts that Special Education Coordinator Brandie Genske will testify regarding these incidents and how they differ from the misconduct that led to the Student's expulsion and that High School Principal Matt Raduechel will testify about his investigation of the incidents and the impact on the Student's classmates.

Under § 1415(i)(2), any party aggrieved by the findings and decisions made pursuant to an IDEA due process hearing may bring a federal action challenging the decision. In adjudicating the claim, a district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). The district court is to "make an independent decision based on the preponderance of the evidence," but because courts do not have special expertise in the area of educational policy, courts must give "'due weight' to the determinations made during the state administrative process." *Bd. of Educ. of Tp. High Sch. Dist. No. 211 v. Ross*, 486 F.3d 267, 270 (7th Cir. 2007) (citing *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)); *see also Patricia P. v. Bd. of Educ. of Oak Park*, 203 F.3d 462, 466 (7th Cir. 2000).

In an action such as this the district court "must take as the basis of its decision the administrative record that the independent hearing officer compiled; it then has the discretion to admit additional evidence to supplement the record." *Ross*, 486 U.S. at 270. A "district court is not required to allow all evidence proffered by a plaintiff in an IDEA proceeding." *Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 901 (7th Cir. 1996). The determination of whether

to allow additional evidence "'must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial *de novo*.'" *Id.* (quoting *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 791 (1st Cir. 1984)). A court may receive additional evidence at the judicial review stage of an IDEA proceeding if the movant explains "why the evidence was not presented at the administrative level and why it is probative of the issues before the court." *Konkel v. Elmbrook Sch. Dist.*, 348 F. Supp. 2d 1018, 1022 (E.D. Wis. 2004) (internal citations omitted). Reasons for allowing supplemental evidence into the record "might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper expulsion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." *Town of Burlington*, 736 F.2d at 790.

The court concludes that supplementation of the record in this case is warranted. The ALJ prevented the District from fairly presenting not only its defense to the Student's case but, even more importantly, its own case in support of its counterclaim that the Student should be placed in an alternative educational setting. In particular, the ALJ limited the hearing to two days with a hard cut-off of 5:00 p.m. on the second day for personal reasons. After limiting the length of the hearing, the ALJ failed to monitor the parties' examinations and ensure that each side had an equal amount of time to present its case. For example, at one point, counsel for the district objected to continued questioning of a witness, noting "we've been going through, you know, cross-examination for an hour and a half now, and frankly, she didn't witness the incident." Hr'g Tr. 466:25–67:04. He advised that "[t]here will be subsequent individuals that will be able to testify." *Id.* at 467:04–05. Counsel argued, "I just don't know if we need to spend the time going through the details of the incident when she's already stated she wasn't there for the incident and she

5

doesn't have first-hand knowledge of it." *Id.* at 467:05–10. The ALJ responded, "No, I will allow it." *Id.* at 467:14.

Although the Student asserts that the additional evidence would not have changed the outcome of the ALJ's decision, the ALJ's decision suggests otherwise. The ALJ noted that she did not afford "much weight" to Ms. Wynveen's statements made to the MDR team because she did not testify at the hearing. *See* ALJ Decision at 7 n.1, Dkt. No. 1-1 ("Ms. Wynveen did not testify at the hearing in this matter and it is unclear whether the information she provided to the MDR team that was reported in the Manifestation Documentation was based upon what she was told versus what she personally observed. As no witnesses who testified at the hearing mentioned her being physically present during the incident that occurred on September 27, 2023, I do not afford much weight to the hearsay summary of her statements.").

To be sure, the District acquiesced to the ALJ's demands and failed to insist that it needed more time to present its case. But the question before the court is not whether the District made the proper objections in the face of the ALJ's determination to conclude the hearing on time. "The proper inquiry [is] whether the [evidence] was relevant, non-cumulative, and otherwise admissible." *E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist. Office of Admin. Hearings*, 652 F.3d 999, 1006 (9th Cir. 2011). Based on the description of the involvement of the three witnesses set forth in the District's brief, the court concludes that the testimony of these three witnesses is probative evidence relevant to the issues presented here, and the court is satisfied that the District did not withhold that evidence for strategic reasons.

The District also offers additional evidence concerning the Student's conduct and behavior that occurred after the due process hearing. Although the court must "guard against admitting 'such evidence to change the character of the hearing from one of review to a trial *de novo*,'" *B.G. v. Bd. of Ed. of City of Chicago*, 901 F.3d 903, 908 (7th Cir. 2018), this does not mean that the

6

court is limited only to evidence that existed at the time of the administrative hearing. Among the kinds of "additional evidence" a district court may allow is "evidence concerning relevant events occurring subsequent to the administrative hearing." *Town of Burlington*, 736 F.2d at 790. Such "after-acquired evidence may shed light on the objective reasonableness of a school district's actions at the time the school district rendered its decision." *E.M.*, 652 F.3d at 1004 (internal quotation omitted).

The post-hearing evidence the District seeks to offer here "may shed light" on the objective reasonableness of the District's actions at the time it rendered its decision and may be relevant to the District's counterclaim that the Student should be placed in an alternative educational setting. Unlike many IDEA matters, this case involves, in addition to the interests of the Student, the safety of school children and personnel. The issue here is not merely a question of whether a child is learning effectively, but whether all children have a safe environment to attend school. That raises strong policy concerns that warrant a more careful scrutiny of the underlying decision and ensure that a fair hearing has been provided. Because this evidence concerns "relevant events occurring subsequent to the administrative hearing," *Burlington*, 736 F.2d at 790, the court will also allow evidence of the Student's post-hearing conduct.

For these reasons, the District's motion to supplement the administrative record (Dkt. No. 13) is **GRANTED**. The clerk is directed to schedule a telephone conference to discuss further proceedings.

**SO ORDERED** at Green Bay, Wisconsin this 17th day of December, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

7

Case 1:24-cv-00770-WCG   Filed 12/17/24   Page 7 of 7   Document 19